**B. J. WESSING and Leonard Twenter, Plaintiffs,**

v.

**AMERICAN INDEMNITY COMPANY OF GALVESTON, TEXAS, Defendant.**

**Gertrude DOUGLAS, Plaintiff,**

v.

**AMERICAN INDEMNITY COMPANY OF GALVESTON, TEXAS, Defendant.**

**Nos. 526, 527.**

United States District Court, W. D. Missouri, Central Division.

Jan. 13, 1955.

Walter A. Raymond, Kansas City, Mo., for plaintiffs.

Henry W. Buck, William H. Curtis and William A. Rundle, Jr. (of Morrison, Hecker, Buck, Cozad & Rogers), Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

Though these are separate cases, they are related, and they are prosecuted, and defended, by the same counsel, and, for economy of time, are hereby consolidated, for the limited purpose of ruling defendant's motion, filed, in each case, under Rule 12(b) (6), 28 U.S.C.A., to dismiss for failure of the complaints to state a claim upon which relief can be granted. The separate cases will be hereinafter referred to as the Wessing case and the Douglas case.

The questions presented, and to be determined, in the Wessing case, are:

(1) Whether the complaint alleges "facts" sufficient to show "bad faith" of defendant, an automobile liability insurer, in refusing an opportunity to settle, within the policy limits and before trial, an action pending against plaintiffs (the insureds, and the defendants in that action) for damages for a serious bodily injury, covered by the policy, and in permitting the action to go to trial, which resulted in a final judgment against plaintiffs greatly in excess of the insurance, and

(2) Whether the plaintiffs (the insureds, and the defendants in the bodily injury action) must first pay that part of the final judgment not discharged by application of the insurance proceeds before they may maintain an action against the defendant, the insurer, for a tortious failure to settle within the policy limits.

The determinative question presented, and to be determined, in the Douglas case, is: Whether the defendant, the insurer, by refusing, "in bad faith", to settle, with the plaintiff in the bodily injury action (Mrs. Douglas), within the policy limits and before trial, breached any duty which it owed to the injured person (Mrs. Douglas), and whether she has any cause of action against the insurer for such failure to settle.

The facts alleged in both complaints, stated briefly but sufficiently to develop the legal questions involved, are: Defendant issued to the plaintiff, Wessing, an automobile liability policy, covering a particularly described motor truck, by which policy it obligated itself, among other things, "to pay on behalf of the insured (and persons driving the truck with his permission) all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile * * * to the extent of $15,000 for each person, and $30,000 for each accident".

While the policy was in full effect and when the plaintiff, Twenter, was driving the insured truck, with the permission, and in the service, of plaintiff, Wessing, a collision occurred with an automobile in which Gertrude Douglas was riding, inflicting serious, painful and permanent injuries upon her.

That defendant was immediately notified of the casualty and accepted the

duty to, and did, investigate the facts concerning it; that thereafter Mrs. Douglas sued plaintiffs, Wessing and Twenter, in the Circuit Court of Boone County, Missouri, praying damages in the amount of $100,000; that defendant took charge of, and conducted and controlled, the investigation, preparation and defense of that action; that depositions were taken in that case, of the plaintiff and of other witnesses, both on the part of the plaintiff and of the defendants, on the questions of liability, and on the question of the nature and extent of plaintiff's injuries, which "made it apparent that a submissible case of negligence would be made for the jury on undisputed evidence and that plaintiff had sustained horrible, incapacitating and permanent injuries which would sustain a verdict greatly in excess of the limits of defendant's policy."

Afterwards, and when the suit was nearing trial, Mrs. Douglas offered, "orally and in writing", to accept the policy limit, of $15,000, in full settlement of all claims, and "these plaintiffs", Wessing and Twenter, "repeatedly urged defendant, both orally and in writing, to accept said offer of plaintiff", or to "negotiate a compromise and settlement of said claim within the policy limits" and they advised defendant that, if it failed to do so, they "would hold defendant responsible for the entire amount of any judgment rendered against them in the case, however much it might exceed the policy limits"; nevertheless "defendant refused to discuss settlement or negotiate and never made an offer of settlement to Mrs. Douglas at any time."

The case went to trial before a jury which returned a verdict for the plaintiff in the amount of $60,000, against both defendants (the plaintiffs here); that an appeal, without supersedeas, was taken to the Supreme Court of Missouri, Douglas v. Twenter, 259 S.W. 2d 353, which ordered a remittitur of $12,500, which was filed, and then the Court affirmed the judgment for $47,-500; that, thereafter, the defendant paid to the Clerk of the trial court the $15,000 of insurance, plus interest on the judgment to the date of that payment, and the court costs, amounting in all to $20,342.74, and defendant then took, and has ever since maintained, the position that it has discharged its full obligation, and has denied, and continues to deny, any further obligation to the plaintiffs, though plaintiffs are left with an unsatisfied judgment against them in the principal sum of $32,500.

Plaintiffs further allege that the defendant "was negligent and guilty of fraud and bad faith", in considering its own interest exclusively and disregarding its duty to, and the interest of, the plaintiffs, in failing to accept the offer to settle said claim and suit for $15,000, which sum was within the policy limits, and, thereby, damaged the plaintiffs to the extent the judgment exceeded the insurance proceeds, or by $32,500, and "that defendant has become, and now is, liable for the remaining unpaid part of said judgment, interest and costs, (although the amounts are above the limits of its policy) in the sum of $32,500 principal, together with interest thereon from July 25, 1953, at the rate of 6% per annum", for which they pray judgment.

The plaintiff in the Douglas case alleges, substantially, the same facts, and asserts that, because of the "bad faith" refusal of defendant to accept her offer to settle, in advance of trial, within the policy limits, defendant breached a duty which it owed to her, which breach has resulted in damages to her, and she asks a declaratory judgment "construing and interpreting the provisions of the policy of insurance in the light of the facts", and that the Court "enter a declaratory judgment that defendant acted in bad faith in refusing to negotiate and settle said claim and is now under the duty to pay the remaining and unpaid balance of said judgment and accrued interest to plaintiff", and that the Court "enter a declaratory judgment directing defendant to pay to

this plaintiff the balance of the principal of said judgment in the sum of $32,500 with interest thereon from July 25, 1953, to date, at the rate of 6% per annum, plus the costs of this proceeding."

These are the facts upon which the legal questions, raised by defendant's motions to dismiss, depend.

As to defendant's first claim, in the Wessing case—that the complaint does not allege "facts" sufficient to show "bad faith" of defendant in refusing the opportunity to settle within the policy limits—, defendant concedes that the Supreme Court of Missouri has held, in the case of Zumwalt v. Utilities Insurance Co., 360 Mo. 362, 228 S.W.2d 750 (as has the St. Louis Court of Appeals in the case of McCombs v. Fidelity & Casualty Co., 231 Mo.App. 1206, 89 S.W.2d 114), that an automobile liability insurer is liable, in tort, for damages suffered by the insured through the failure of the insurer to accept an opportunity to settle within the policy limits, if, and provided, the failure to settle "is predicated upon the lack of good faith". But defendant says, in its brief, "plaintiffs cannot plead a cause of action by alleging, as a conclusion, that defendant was guilty of bad faith. Plaintiffs must allege *facts* showing bad faith on the part of defendant, and they have not done this."

It is true that the complaint alleges, on this score, only that from the investigation made, and depositions taken, it was "apparent that a submissible case of negligence would be made for the jury on undisputed evidence and that plaintiff had sustained horrible, incapacitating and permanent injuries which would sustain a verdict greatly in excess of the limits of defendant's policy * * *", and does not say that the insurer could not, reasonably, and in "good faith", have expected either a verdict for defendant or a verdict for plaintiff, but within the policy limits, or use words of similar import. While the failure to settle, within the policy limits of $15,000, "a submissible case", established by "undisputed evidence"—even where the injuries were "horrible"—, would not, necessarily, show "bad faith", yet, if, in the particular circumstances, reasonable minds might differ upon the point, the issue would be one for the jury. But here the complaint alleges more. It alleges that the defendant, insurer, in "bad faith" and "considering its own interests exclusively and disregarding its duty to these plaintiffs" refused to consider the offer to settle, or to negotiate for a settlement, within the policy limits. I believe these allegations, taken together, are sufficient to state a claim on which relief could be granted, within the meaning of Rule 8(a) (2) of Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and says nothing about "facts", which, under the system of the rules, are left to discovery, and, therefore, I cannot sustain defendant's first point.

Defendant's second, and last—and far more important and troublesome—point, in the Wessing case, is its contention that the insureds, the plaintiffs here, cannot maintain this action until they have paid, and they do not allege that they have paid, that part of the final judgment which remained after application of the insurance proceeds.

This is not an action to enforce the contractual liability of the insurer to pay the *insurance* provided for by the policy, and, therefore, Missouri Statutes, Sections 379.195 and 379.200, V.A. M.S., enabling recovery (by either the insured or the judgment creditor) from the casualty insurer of "insurance money", without first paying the judgment, like the Missouri cases of Brucker v. Georgia Casualty Co., 326 Mo. 856, 32 S.W.2d 1088; Moberly v. Leonard, 339 Mo. 791, 99 S.W.2d 58; Miller v. Collins, 328 Mo. 313, 40 S.W.2d 1062, and Drumm v. Fort Dearborn Casualty Underwriters, Mo.App., 5 S.W.2d 648, cited by plaintiffs, and which sustained actions to enforce *contractual*

*liabilities,*—particularly, to enforce covenants against "liability" as distinguished from covenants against "loss", without first paying the judgment or loss—are not in point. Here the "insurance" or "insurance money", provided for in the contract (policy), has been paid.

While this action stems from the contract, it is not an action upon the contract. Rather, it is an action, in tort, for damages for the alleged failure of the defendant, the insurer, to perform, in good faith, the terms of its policy, including its agency relationship with the insureds (to take complete and exclusive charge of, and to control, the investigation, preparation and disposition, within the policy limits, of claims and suits arising under the policy), and in, allegedly, subordinating the interests of its principal, the insureds, to its own interests, in its "bad faith" refusal to settle, within the policy limits, and thus prevent, as was its good faith duty, the rendition of a judgment against the insureds in excess of the policy limits. Zumwalt v. Utilities Ins. Co., supra.

 The defendant, insurer, owed to plaintiffs, the insureds, the duty to exercise good faith in respect to settlement of Mrs. Douglas' claim and suit, and if it, in "bad faith", breached that duty, then it became liable to plaintiffs, the insureds, for at least *nominal damages,* even though there be no proof of actual damages or loss suffered by plaintiffs, Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 145 A.L.R. 1176, and, for this reason, alone, defendant's motion to dismiss (for want of allegation of damage), cannot be sustained.

But, to rest this decision, solely, upon the fact that at least nominal damages would be recoverable, if plaintiffs make a submissible case of "bad faith", would be unsatisfactory and to leave the substantive question dangling, and I feel obliged to proceed to determine the question of whether payment of the unsatisfied judgment, or some part of it, must first be made before plaintiffs may recover anything more than nominal damages in this suit.

From briefs of counsel, and my research, I find that this question has been squarely raised and decided in only five jurisdictions in this country, and those holdings are in irreconcilable conflict. The Supreme Court of New Hampshire, in Dumas v. Hartford Accident & Indemnity Co., 92 N.H. 140, 26 A.2d 361, has held that payment of the judgment is a necessary prerequisite. The United States Court of Appeals, for the Fourth Circuit, dealt with the question in State Automobile Mut. Insurance Co. v. York, 104 F.2d 730, 734, but in what I believe to be an obiter statement, and citing no authority, saying "Furthermore, it does not appear that insured was in any way damaged by the company's refusal to settle, as he had not paid the judgment against him *and testified that he never expected to pay it.*" (Emphasis mine.) Texas appears to have decided the question both ways. In Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475, the Texas court, as I understand the case, held that payment of the judgment is a necessary condition precedent to recovery in a case like this. On the other hand, the Supreme Court of Wisconsin, in the case of Schwartz v. Norwich Union Indemnity Co., 212 Wis. 593, 250 N.W. 446, and the Court of Appeals of Tennessee, in the case of Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785, and the Texas Courts of Civil Appeals, in American Indemnity Co. v. Fellbaum, Tex.Civ.App., 285 S.W. 873, and in General Accident, Fire, etc., Corp. v. Butler's Ice Cream Factory, Tex.Civ. App., 291 S.W. 674, and in Universal Automobile Insurance Co. v. Culberson, Tex.Civ.App., 54 S.W.2d 1061, have each held that the mere existence of the liability of the judgment sufficiently establishes the damage, and its measure, and that payment of the judgment is not a necessary prerequisite to recovery of damage from the insurer.

I believe the conclusion of the latter cases is right, certainly in the light of the general law in Missouri. I believe this not only because of the reasoning in those cases, but also because of the following: It has always been the law in Missouri, that in an action for damages for a bodily injury, the plaintiff, who has been required, as a result of the injury, to *incur* medical, medicine, nursing and hospital expense, is entitled to have that element of his damage submitted to the jury though there be no evidence of payment. The question was squarely decided, long ago, by the Supreme Court of Missouri in Curtis v. McNair, 173 Mo. 270, 73 S.W. 167, 172, saying "There is no difference, so far as the right to compensation in a case like this [a personal injury case] is concerned, between *expending* sums and *incurring* obligations. The plaintiff is entitled to recover for either." (Emphasis mine.) The same principle is announced and followed in many other Missouri cases, including Cordray v. City of Brookfield, Mo.Sup., 88 S.W.2d 161, —but not reported in state reports; Price v. Metropolitan St. R. Co., 220 Mo. 435, 119 S.W. 932 (en banc). This is hornbook law in Missouri. It would be the clearest kind of error for a Missouri court to instruct a jury that they could not consider the element of damage consisting of medical, nursing and hospital expenses which had been *incurred* by the plaintiff but not *paid*. I think the analogy between that element of damage in a bodily injury suit, on the one hand, and the element of damage to the plaintiffs here, through suffering or "incurring" this judgment, on the other hand, is so close as to be indistinguishable, and, I think, too, that payment is no more a condition precedent to suit for recovery of the damage in the one case than in the other.

Moreover the judgment which plaintiffs claim they were caused to suffer, or to incur, by the "bad faith" of defendant, survives for 10 years from its rendition and is subject to being kept alive, perpetually, by a simple scire facias within each 10-year period, Section 511.370 et seq., V.A.M.S., whereas, the tort, here alleged to have been committed by defendant against the plaintiffs, became complete upon the finality of the judgment against them, and, under the Missouri Statutes of Limitation, Section 516.120(4), V.A.M.S., they must sue on that tort within five years or the action will be barred. Suppose they do sue, in that time, and, because, at the time of trial, they have not paid the judgment, and the court holds payment to be a prerequisite to a recovery of actual damages, the court awards them only nominal damages of $1, which judgment the defendant pays, then the next day, or week, or month, or year, the judgment debtors are required, upon execution or otherwise, to pay the judgment, or some part of it, and they then attempt to sue the insurer for recovery of the amount they were so required to pay. Would they not be met by the claim of res judicata? Would not the result be that they could never recover? Hence, must they not recover now (without first payment of the judgment) or never? Innumerable variations of the hypothesized conditions could be imagined, but they all lead to the same result.

These, in addition to the reasons stated in the Wisconsin, Tennessee and Texas cases cited above, are the reasons why I think those cases state the proper rule to be applied to this question.

The question was once before the Springfield Court of Appeals in Helm v. Inter-Insurance Exchange, 189 S.W. 2d 422, wherein the Court dealt with the question—I think somewhat unsatisfactorily—and reached a conclusion similar to the one here expressed, but that case was reversed by the Supreme Court, on other grounds, in Helm v. Inter-Insurance Exchange, 354 Mo. 935, 192 S.W.2d 417, 167 A.L.R. 238, —the ground being the good and sound one that plaintiff had not shown a liability of defendant, and, hence, the Supreme

Court never got to the question of whether payment of the judgment was a condition precedent to an action for damages for its wrongful imposition, by defendant, upon the plaintiff.

■ Now as to the Douglas case. While hers is a declaratory judgment action, it nevertheless asks a declaration of liability of the defendant to her and it asks a judgment in her favor against defendant for the unpaid portion of the judgment of $32,500 and interest. While, as plaintiff claims, the declaratory judgment act is procedural in nature and should be liberally construed, Reliance Life Ins. Co. v. Burgess, 8 Cir., 112 F.2d 234; Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 137 F.2d 68, yet a complaint in a declaratory judgment action, like any other action, must state a claim —an "actual controversy" or a "justiciable controversy", Section 2201, Title 28, U.S.C.A.—upon which relief can be granted.

■ This action does not seek to reach the "insurance" or "insurance money"—as that has been paid—and, therefore, Sections 379.195 and 379.200, V.A.M.S., and the declaratory judgment cases cited by plaintiff, of Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Caldwell v. Travelers Ins. Co., D.C., 45 F.Supp. 573; Ohio Casualty Ins. Co. v. Maloney, D.C., 44 F.Supp. 312, and New York Casualty Co. v. Lewellen, 8 Cir., 184 F.2d 891,—brought, either by the insurer or insured (making the injured claimant a party), to determine coverage by the policy of a pending claim—do not apply. Nor is this a case like Ohio Casualty Ins. Co. v. Gordon, 10 Cir., 95 F.2d 605, or American Casualty Co. of Reading, Penn. v. Howard, 4 Cir., 173 F.2d 924, because, there, quite different from here, not only the claimants or judgment creditors, but also the insureds (as well as the insurer), were parties to the declaratory judgment action, and, hence, both the "indispensable" parties (the insurer and insured) and also the "proper" parties (the claimants or judgment creditors), under Rule 19 of Federal Rules of Civil Procedure, were before the court, which gave the Court jurisdiction to determine the "actual controversy" existing between the insurer and the insureds, who were the "indispensable" parties. Here the insureds—though "indispensable" parties—are not parties. No case that I have found holds that there can be an "actual controversy", or "justiciable controversy", between, and only between, a judgment creditor and a liability insurer in a case, like this, to recover damages for a refusal to settle, before trial, within the policy limits.

Here, the excess liability asserted arises out of the relationship between the defendant, the insurer, and its insureds. Mrs. Douglas was a stranger to that relationship. The defendant owed her no duty at all. Hence, I fail to see how it could be liable to her, in tort, for a breach of duty, for it owed her none. Moreover, her complaint shows that had her offer to settle been accepted she would have gotten $15,000, but, because it was rejected, her cause went to trial and she obtained a $47,500 judgment, $15,000 of which has been paid. Thus, she did not lose, but stands to benefit, by the failure of defendant to accept her offer of settlement.

The case by the Supreme Court of Missouri, of Helm v. Inter-Insurance Exchange, supra, is enlightening upon this question and holds, at page 420 of 192 S.W.2d, as you might expect, that a " 'plaintiff to recover upon that theory [tort] must show, not merely that defendant assumed an obligation under the contract, but that out of that obligation there arose *a duty to her.*' " Here, plaintiff, Mrs. Douglas, attempts to assert a tort claim arising out of a contract to which she was a stranger and under which there was no "duty to her", and in which tort claim she has no interest.

It follows, in my view, that the complaint in the Douglas case fails to state a claim upon which relief can be granted.

It is, therefore, ordered, adjudged and decreed by the court that defendant's motion to dismiss in cause No. 526, entitled B. J. Wessing and Leonard Twenter, Plaintiffs, v. American Indemnity Co. of Galveston, Texas, Defendant, should be, and it is hereby, overruled and denied.

It is ordered, adjudged and decreed by the court that defendant's motion to dismiss cause No. 527, entitled Gertrude Douglas, Plaintiff, v. American Indemnity Co. of Galveston, Texas, Defendant, should be, and it is hereby, sustained and granted.